UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Kendle C. Mardis,
    Plaintiff

vs

Officer Steve Timberlake, et. al.,
    Defendants

Case No. C-1-07-1005
(Dlott, J)
(Hogan, M.J.)

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 36), Plaintiff's Opposition to Deny Defendant's Motion for Summary Judgment (Doc. 45), and Defendant's Reply thereto (Doc. 46).

### BACKGROUND

Plaintiff's Complaint asserts constitutional claims under 42 U.S.C. § 1983, as well as state law tort claims. (Doc. 3). Plaintiff's claims are based on incidents which occurred on January 5, 2007 and April 21, 2007, when Plaintiff was detained by Defendant Timberlake, a law enforcement officer with the City of Portsmouth, Ohio, Narcotics Unit. Plaintiff claims that Defendant used excessive force in the course of a traffic stop on January 5, 2007. Plaintiff further alleges that Defendant gave false testimony to the Grand Jury which testimony "induced Plaintiff into accepting a plea bargain." (Doc. 45).

On September 26, 2006, Plaintiff came to the Portsmouth Police Department, offering to cooperate with law enforcement in exchange for the dismissal of criminal charges against him by the Scioto County Sheriff's Office ("SCSO"). (Declaration of Steve Timberlake at ¶2(a)).[1] Plaintiff told Defendant that an individual from Columbus known by the street name "Snoop" was selling crack cocaine on Linden Avenue in Portsmouth and agreed to purchase crack cocaine from this individual. (Id. at ¶2(c)).

Defendant contacted Officer Pat Brooks of the Columbus Police Department for further

---

[1] On September 20, 2006, a van occupied by Plaintiff and another individual was stopped by the SCSO. Cocaine was found in the van and Plaintiff was subsequently charged with a drug related offense. (Timberlake Decl. at ¶2(b)).

information regarding Plaintiff and Snoop. (Timberlake Decl. at ¶2(d)). Officer Brooks identified "Snoop" as Clarence Tyree, a gang member from Columbus. (Id. at ¶2(d)). Brooks related to Defendant that Plaintiff was an informant for the FBI and was scheduled to testify in a murder trial in Columbus. (Id. at ¶2(d)).

Plaintiff made a controlled purchase of crack cocaine from Clarence Tyree at a house in Portsmouth later that morning. (Timberlake Decl. at ¶2(e)). Later in the afternoon, Defendant, other officers of the Portsmouth Police Department, and Officers Brooks and Castro, executed a search warrant for the house. (Id.. at ¶2(f)). Officers found approximately 16 grams of crack cocaine in Tyree's possession. (Id. at ¶2(f)).

In late December 2006, multiple calls were received by the Portsmouth Police Department Drug Hotline concerning suspected drug activity, in which Plaintiff and Redmond were allegedly involved, occurring at the garage at Ninth and Court Streets. (Id.. at ¶¶4, 5, 6).

On January 5, 2007, Defendant observed Plaintiff's car parked in the area of Ninth and Court Streets in the City of Portsmouth. (Timberlake Decl. at ¶7(a)). When Defendant contacted Officer Brooks of the Columbus Police Department, he was informed that law enforcement officials in Columbus had paid to relocate Plaintiff to Atlanta, Georgia and that he was not supposed to be in Ohio. (Id.). Defendant claims he was asked by Brooks to speak with Plaintiff and ascertain the reason for his presence in Portsmouth. (Id. at ¶7(a)). When asked for consent to search his vehicle, Plaintiff refused to consent. (Id.).

Defendant requested a K-9 unit to report to the scene. (Timberlake Decl. at ¶7(a)). While waiting for the arrival of the K-9 unit, Defendant received a phone call from Officer Caroline Castro of the Columbus Police in which she requested that Defendant detain Plaintiff until the Columbus Police Department and/or the FBI in Columbus decided what to do. (Id. at ¶7(b)).

While Plaintiff was being detained, Defendant asked him the whereabouts of Jonathan Redman. (Timberlake Decl. at ¶7(c)). Plaintiff answered that Redman may be in Jeff Shales' garage, less than a block away. (Id.). After receiving consent from Jeff Shales, the renter of the garage, Defendant and another officer searched the building. (Id.). Redman was not at the location, but Defendant found crack pipes and other items of drug paraphernalia which resulted in the issuance of a minor misdemeanor citation for Shales. (Id.).

After arriving at the scene, the K-9 unit alerted on Plaintiff's vehicle. (Timberlake Decl. at ¶7(d)). The vehicle was then searched, however no contraband was found. (Id.). Upon being informed that Redman was not in the garage, Plaintiff told Defendant that Redman and Lori Grooms were on their way back from Columbus with multiple Oxycontin pills and that he would assist Defendant in arresting them. (Id. at ¶7(e)). Upon calling Redman, Plaintiff learned that Redman had not left Columbus yet. (Id.).

Defendant was told by Officer Castro that, if there was no other reason to hold Plaintiff,

he could be released. Defendant was further instructed to tell Plaintiff that he was not to be in Ohio until he was needed for his testimony in the murder trial. (Timberlake Decl. at ¶7(f)). Plaintiff was then released. (Id.). Defendant claims that he used no force on Plaintiff and that Plaintiff's person was not searched, other than the pat down search of his outer clothing upon exiting the vehicle. (Id.). He further contends that Plaintiff's vehicle was not searched until after the K-9 unit dog alerted on the vehicle. (Id. at ¶7(d)).

Plaintiff testified in his deposition that Defendant grabbed him out of his car and choked him with one hand, while pointing a gun at him with the other. (Doc. 36, Ex. 2, Deposition of Kendle Mardis at 90-91). Plaintiff also claims that, while he was handcuffed, Defendant " in plain view of other witnesses . . . pulled down Plaintiff's pants to search for drugs." (Plaintiff's Dep. at 92, 102). Plaintiff admitted he was able to drive his vehicle all the way back to Atlanta immediately after the incident and that he sought no medical treatment. (Plaintiff's Dep. at 144-46).

On April 21, 2007, the Portsmouth Police Department received a report that someone inside a building on 2120 Ninth Street in Portsmouth had overdosed on drugs and that two black males from Columbus refused to allow anyone to call for help.[2] (Timberlake Decl. at ¶10(a)). When Defendant and the other officers arrived at the scene, they found several known drug users standing outside in the vicinity of the house. (Timberlake Decl. at ¶10(b)). While Officers knocked on the side door of the residence, one of the residents, Robby Neal, exited the front door. (Timberlake Decl. at ¶10(b)). Upon being told of the overdose report, Neal denied any problem. (Timberlake Decl. at ¶10(b)). However, he eventually allowed the officers to enter. (Timberlake Decl. at ¶10(b)). The officers entered, announcing themselves as police officers as they walked through the residence. (Timberlake Decl. at ¶10(c)). Although Neil had stated that only his children were inside, the officers did not locate Neal's children. They did, however, find Jonathan Redman sitting in an upstairs bedroom and Plaintiff sitting in an upstairs living room. (Timberlake Decl. at ¶¶10(b), (c)). Plaintiff and Redman were the only two people found inside the residence. (Timberlake Decl. at ¶10(c)). According to Defendant, Plaintiff appeared to be out of breath as if he had been running. (Timberlake Decl. at ¶10(c)). Individuals both inside and outside the residence were detained and the Portsmouth Police Department K-9 unit was requested. (Timberlake Decl. at ¶10(d)). The K-9 alerted in several places and approximately 61 grams of crack cocaine, 72 oxycontin pills, a set of digital scales, and $251 cash were found in the upstairs bedroom of the house. (Timberlake Decl. at ¶10(d)). Redman was arrested for possession of drugs. (Timberlake Decl. at ¶10(d)). According to Defendant, at the time of his arrest, Redman made the spontaneous statement that Plaintiff had also been in the upstairs bedroom that night and that he believed that Plaintiff had set him up. (Timberlake Decl. at ¶10(d)). Because Plaintiff was found to have an outstanding arrest warrant from Indiana, he was placed under arrest. (Timberlake Decl. at ¶10(e)). Once notified that Plaintiff was being held at the Scioto County Jail on the outstanding warrant, Officer Brooks arrived to pick up Plaintiff to

---

[2] According to the report, the two men had both guns and drugs in their possession. (Timberlake Decl. at ¶ 10(a)).

testify at the murder trial. (Timberlake Decl. at ¶10(f)). Defendant claims he used no force against Plaintiff during the incident and that Plaintiff's person was searched only incident to his arrest on the warrant. (Timberlake Decl. at ¶10(g)).

An indictment was sought against Plaintiff and in July 2007, a Grand Jury indicted Plaintiff for trafficking in drugs and possession of drugs in connection with the April 21, 2007 incident. (Timberlake Decl. at ¶11, Ex., A).

**OPINION**

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Qualified Immunity on Plaintiff's Excessive Force Claim

Government officials, including prison officials, "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Black v. Parke*, 4 F.3d 442, 444 (6th Cir. 1993), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a three pronged analysis. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc). First, the Court must determine whether the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. *Id*. *See Saucier*, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Second, the Court determines whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Id.; Feathers*, 319 F.3d at 848; *Williams*, 186 F.3d at 691. Third, the Court must examine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Feathers*, 319 F.3d at 848; *Williams*, 186 F.3d at 691.

A constitutional right is "clearly established," thereby precluding the application of qualified immunity, if "the law [is] clear in regard to the official's particular actions in the particular situation." *Black*, 4 F.3d at 445, quoting *Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir.), *cert. denied*, 112 S.Ct. 187 (1991). *See also Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir.), *cert. denied*, 116 S.Ct. 524 (1995). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ." *Saucier*, 533 U.S. at 201. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Id*.

Neither pointing a gun at individuals nor using handcuffs constitutes excessive force under the Fourth Amendment. *See Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989)(citing

*Hinajosa v. City of Terrell, Tex.*, 834 F.2d 1223 (1988)); *Neague v. Cynkar* 258 F.3d 504, 507-08 (6th Cir. 2001). However, Plaintiff claims that Defendant choked him while pointing his gun at him. Plaintiff also claims that, in effectuating his search of Plaintiff's person, Defendant pulled Plaintiff's pants down in full view of other individuals.

Viewing the evidence in the light most favorable to the plaintiff, *Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998), the issue of the reasonableness of Defendant's use of force is an issue of fact which precludes summary judgment for Defendant on the excessive force claim. Here, Plaintiff's deposition testimony states that Defendant grabbed him out of his car and choked him with one hand, while pointing a gun at him with the other. (Doc. 36, Ex. 2, Deposition of Kendle Mardis at 90-91). Plaintiff also claims that, while he was handcuffed, Defendant " in plain view of other witnesses . . . pulled down Plaintiff's pants to search for drugs."

For purposes of summary judgment, the Court must accept the Plaintiff's version of events as true, and must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, Inc.*, 477 U.S. at 251-52. In this case, Plaintiff's deposition testimony indicates that Defendant choked him while pointing a gun on him. He further states that Defendant used racial slurs in the process. (Plaintiff's Dep. at 89). Plaintiff's facts, if true, would indicate that the force used exceeded that reasonably necessary to accomplish an arrest or to secure Plaintiff and the area. The Court notes that the credibility of Plaintiff's statements is an issue for the jury, and a jury certainly would be entitled to credit that testimony. The Court cannot assume that a jury would disbelieve Plaintiff unless his testimony is so unbelievable or so discounted by other evidence that a reasonable jury could not believe it. The Court does not find other evidence creating that result. Where Plaintiff's deposition testimony is based on first hand knowledge and states facts creating a claim of excessive force, the Court may not resolve the case by finding one witness more credible than another. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). The facts viewed in the light most favorable to Plaintiff show Defendant's use of force against him was excessive and that a constitutional violation has occurred. *Saucier*, 533 U.S. at 201.

In terms of the second prong of the qualified immunity analysis, whether the violation involved a clearly established constitutional right of which a reasonable person would have known, *Feathers*, 319 F.3d at 848; *Williams*, 186 F.3d at 691, it is well established that an individual has a constitutional right not to be subjected to excessive force during the course of an arrest. *See, e.g., Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994).

Third, Plaintiff has offered sufficient evidence showing that Defendant's alleged use of force was objectively unreasonable in light of the clearly established constitutional rights. *Feathers*, 319 F.3d at 848; *Williams*, 186 F.3d at 691. Defendant states he was choked to the

point that he had difficulty breathing and that he asked to be taken to the hospital as a result.[3] A reasonable officer would not believe that choking a suspect in the course of a traffic stop is an objectively reasonable use of force.

Defendant argues that Plaintiff admitted that he was not injured, needed no medical treatment and was able to drive himself to Atlanta, Georgia immediately following this incident. The Sixth Circuit has held that "a plaintiff may allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999), citing *Holmes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir. 1996) (upholding excessive force claim where plaintiff alleged that officers used excessive force in removing her wedding ring). The Court in *Ingram* went on to explain:

> Claims of excessive force do not necessarily require allegations of assault. *See Cornwell v. Dahlberg*, 963 F.2d 912, 915 (6th Cir. 1992). As we recognized in *Holmes*, a victim of police brutality may recover under § 1983 for 'emotional harm [that] can often be quite difficult to measure in mere monetary terms.' 78 F.3d at 1048. In accordance with these legal precedents, the district court erred in finding, as a matter of law, that the officers did not use excessive force against Ingram and Collins on the grounds that they did not suffer sufficient injuries.

*Ingram*, 185 F.3d at 597. *See also Kostrzewa v. City of Troy*, 247 F.3d 633, 640 n.3 (6th Cir. 2001)(Regardless of whether Kostrzewa's injuries left physical marks or caused extensive physical damage, he can still successfully allege that Officers used excessive force against him.).

Thus, the fact that Plaintiff required no medical treatment and was able to drive himself to Atlanta, Georgia does not lead to the inescapable conclusion that Defendant did not use excessive force against Plaintiff on January 5, 2007. *Ingram*, 185 F.3d at 597. Plaintiff's deposition testimony states that Defendant grabbed him out of his car and choked him with one hand while pointing a gun at him with the other. Plaintiff also claims that, while he was handcuffed, Defendant " in plain view of other witnesses . . . pulled down Plaintiff's pants to search for drugs." Plaintiff claims that as a result of Defendant's actions, his neck was sore and he requested medical attention. Plaintiff's version of the facts, if accepted by the jury as true, would establish that the force used by Defendant surpassed that which was reasonably necessary to secure his arrest. The issue of credibility cannot be determined by the Court on summary judgment, but is an issue for the jury at trial.

For these reasons, Defendant is not entitled to qualified immunity on Plaintiff's excessive use of force claim. Accordingly, his motion for summary judgment on this claim

---

[3] Plaintiff states that he requested to be taken to the hospital for two reasons: 1) his neck was sore from the choking; and 2) he wanted to prove that he had not attempted to swallow any drugs. (Doc. 36, Plaintiff Dep. at 105-106).

should be denied.

Qualified Immunity on Plaintiff's § 1983 Claim for Illegal Search

Plaintiff claims that he did not consent to the search of his vehicle on January 5, 2007 and thus the resulting search was illegal. Following the three-step procedure for determining qualified immunity, the Court must first address whether, viewing the facts in the light most favorable to Plaintiff, the initial investigative stop of Plaintiff's vehicle was constitutionally valid under the Fourth Amendment. "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). It is settled that police officers may stop a motor vehicle without a warrant for investigative purposes where the officers have a reasonable suspicion, based on articulable facts, that a person has committed or is about to commit a crime. *See Terry v. Ohio*, 392 U.S. 1 (1968). *See also Florida v. Royer*, 460 U.S. 491, 498 (1983). Such a stop is permissible only when the officers are aware of particularized and articulable objective facts which, when taken together with rational inferences drawn therefrom, reasonably warrant the suspicion that the person stopped is engaged in criminal activity or that criminal activity "'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989), quoting *Terry*, 392 U.S. at 30. *See also Arvizu,* 534 U.S. at 273; *United States v. Cortez*, 449 U.S. 411, 417-418 (1981); *Adams v. Williams*, 407 U.S. 143, 145 (1972); *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998)(en banc), *cert. denied*, 525 U.S. 1123 (1999).

"'Reasonable suspicion' is more than an ill-defined hunch; it must be based upon 'a particularized and objective basis for suspecting the particular person . . . of criminal activity.'" *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999), citing *Cortez*, 449 U.S. at 417-18. Reasonable suspicion is less than that required for probable cause, but there must be at least a "minimal level of objective justification" for making the stop. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Houston*, 174 F.3d at 813. Reviewing courts should not, however, "demand scientific certainty" from law enforcement officers. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). Rather, a reasonable suspicion determination "must be based on commonsense judgments and inferences about human behavior." *Id*. Thus, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274; *Wardlow*, 528 U.S. at 123. While the concept of "reasonable suspicion" is not a "finely tuned standard," *Cortez*, 449 U.S. at 417, the Supreme Court has identified several factors which may amount to reasonable suspicion under the circumstances: specialized knowledge and investigative inferences, *Cortez, supra*; personal observation of suspicious behavior, *Terry, supra*; and information from sources unknown to police as corroborated by independent police work. *Alabama v. White*, 496 U.S. 325, 332 (1990).

Whether there is reasonable suspicion under *Terry* depends on the totality of the circumstances. *See United States v. Cortez*, 449 U.S. at 417; *Erwin*, 155 F.3d at 822. "This

means that a court 'must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately.'" *Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003), quoting *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001). The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arivuz,* 534 U.S. at 273, quoting *Cortez,* 449 U.S. at 418. Hence, the Court must give "due weight" to the factual inferences drawn by local law enforcement officers when reviewing the officer's reasonable suspicion determination. *Id.* Additionally, the "determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Arvizu,* 534 U.S. at 277. The totality of the circumstances, whether innocent or not, must indicate that criminal activity may be afoot. *Id.*

In the instant case, the facts viewed in the light most favorable to Plaintiff and in their totality show that Defendant had reasonable suspicion to stop Plaintiff's vehicle in order to verify or dispel his suspicions that criminal activity may be afoot. The following facts, while seemingly innocent when viewed in isolation, when taken together provided Defendant reasonable suspicion to stop Plaintiff's vehicle. Plaintiff had participated in a controlled purchase of crack cocaine from a Columbus gang member. At such time, Defendant was informed that Plaintiff was an informant for the FBI and a witness in a murder trial. In December of 2006, the Portsmouth Police Department Drug Hotline received multiple calls indicating that Plaintiff and Redman were selling drugs and reporting suspected drug activity at a garage located at Ninth and Court Streets in Portsmouth. On January 5, 2007, Plaintiff was observed parked less than a block away from this garage. Defendant was informed by Officer Brooks that Columbus law enforcement officials had paid to relocate Plaintiff to Atlanta, Georgia and Plaintiff was not supposed to be in the Portsmouth area. Defendant was asked by Officer Brooks to speak with Plaintiff to ascertain the reason for his presence in Portsmouth. This activity could reasonably raise a suspicion that criminal activity may be afoot. These facts, taken as a whole, created a particularized and objective basis for an investigatory stop of Plaintiff's vehicle. The Court finds the stop reasonable under *Terry* and its progeny and therefore reasonable within the meaning of the Fourth Amendment.

Having concluded that Defendant had a reasonable suspicion to initially stop Plaintiff, the Court must determine whether Defendant had sufficient reasonable suspicion to detain Plaintiff after the purposes of the traffic stop had been accomplished. *U.S. v. Bailey,* 302 F.3d 652, 657 (6th Cir. 2002). "[A]ny subsequent detention after the initial stop must not be excessively intrusive in that the officer's actions must be reasonably related in scope to circumstances justifying the initial interference." *Id.*, citations omitted. "Once the purposes of the initial traffic stop [are] completed, there is no doubt that the officer [can] not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *Id.* at 657-58, quoting *United States v. Mesa,* 62 F.3d 159, 162 (6th Cir. 1995). *See also U.S. v. Hill,* 195 F.3d 258, 264 (6th Cir. 1999); *United States v. Erwin,* 155 F.3d 818, 822 (6th Cir.1998) (en banc), *cert. denied,* 525 U.S. 1123

(1999).

In the instant case, Defendant had a reasonable suspicion based on the totality of the circumstances to detain Plaintiff. In light of Plaintiff's past criminal drug activity, as well as the fact that Plaintiff was not supposed to be in Portsmouth, Defendant conducted an initial search of Plaintiff's person. While the initial search of Plaintiff's person did not yield contraband, Plaintiff refused consent to search his vehicle. While awaiting the arrival of the requested K-9 unit, Plaintiff informed Defendant that Redman was in the garage one block away. Although Redman was not found at the site, crack pipes and other drug paraphernalia was found. The K-9 unit alerted to Plaintiff's car. Once the K-9 dogs arrived and alerted to Plaintiff's car, it is clear that Defendant had probable cause to search the car. *See Bailey*, 302 F.3d at 659 n.7, citing *United States v. Diaz*, 25 F.3d 392, 393-94 (6th Cir. 1994) ("A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." (citation omitted).

Following the search by the K-9 units, Defendant received a call from Officer Castro who indicated that if there was no independent reason to detain Plaintiff, Defendant was free to release Plaintiff. As no contraband was found in Plaintiff's car, Plaintiff was released. In view of the totality of the circumstances, Defendant had reasonable suspicion to detain Plaintiff following the initial *Terry* stop.

In view of the above facts, Plaintiff has failed to establish a violation of his Fourth Amendment rights. Because Plaintiff failed to satisfy the first prong of the qualified immunity analysis, the Court need not address whether the right was clearly established. *See Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003). Accordingly, Defendant's Motion for Summary Judgment should be granted on Plaintiff's Fourth Amendment claim for illegal search.

<u>False Arrest and False Imprisonment Claims</u>

A section 1983 claim requires a constitutional violation. *Gorcaj v. Medulla*, 51 Fed.Appx. 158, 159, 2002 WL 31558071, *2 (6th Cir. Nov. 15, 2002)(citing *Frantz v. Village of Bradford*, 245 F.3d 869, 873 (6th Cir.2001)). "Thus, a section 1983 claim based on theories of false arrest, false imprisonment, and malicious prosecution stands on the Fourth Amendment and turns on the question of probable cause." *Id.*

A county grand jury indicted Plaintiff, and a "finding by the grand jury is prima facie evidence of probable cause." *Johnson v. Ward*, 43 Fed.Appx. 779, 782-83, 2002 WL 1774215, *3 (6th Cir. July 31, 2002)(citing *Worley v. Columbia Gas of KY., Inc.*, 491 F.2d 256, 263 (6th Cir.1973)). Plaintiff has thus failed to plead sufficient facts to overcome this prima facie evidence of probable cause.

The Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which requires a criminal defendant to show the invalidity of his conviction before seeking relief under

42 U.S.C. § 1983 for claims calling into question the validity of that conviction, is not to be extended to the pre-conviction arena. *See Wallace v. Kato,* 127 S.Ct. 1091, 1098 (2007) (abrogating *Shamaeizadeh v. Cunigan,* 182 F.3d 391 (6th Cir.), *cert. denied,* 528 U.S. 1021 (1999)). *See Fox v. DeSoto,* 489 F.3d 227, 233 (6th Cir. 2007). The Supreme Court stated that the "*Heck* rule for deferred accrual is called into play only when there exists 'a conviction or sentence that has *not* been . . . invalidated,' that is to say, an 'outstanding criminal judgment.'" *Id.* at 1097-98 (quoting *Heck,* 512 U.S. at 486-87). The Supreme Court rejected the contention that "an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside." *Id.* at 1098 (emphasis in the original). The *Wallace* Court held that *Heck* did not create a blanket rule that all § 1983 claims are not cognizable until dismissal or resolution of criminal charges. *Id.* at 1097. Under pre-conviction circumstances, a stay of proceedings, and not dismissal under *Heck*, is appropriate. *Id.* at 1098.

At the time Plaintiff filed his original Complaint, he was a pretrial detainee and had not been convicted of the pending criminal charges. Thus, *Heck* did not apply to bar Plaintiff's § 1983 action. *Id. See also Eidson v. State of Tennessee Dept. of Children's Services,* 510 F.3d 631, 639 (6th Cir. 2007).

Subsequent to the filing of the original Complaint, however, Plaintiff was convicted of trafficking in drugs and possession of drugs in violation of Ohio Rev. Code § 2925.03(A)(2) & (C)(1)(d), (C)(4)(f); §2925.11(A), (C)(1)(c), (4)(e). (Doc. 36, Timberlake Decl., Ex. A). On April 21, 2007, Plaintiff plead guilty to possession of drugs and sentenced to a term of imprisonment of two years. (Id.). Since plaintiff has been convicted, *Heck* requires dismissal of Plaintiff's claim for false arrest. As the Supreme Court explained in *Wallace*:

> If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. . . . *If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, Heck will require dismissal.* . . .

*Id.* at 1098 (internal citations omitted) (emphasis added).

Plaintiff argues that Defendant lied to the Grand Jury thereby inducing Plaintiff to accept a plea bargain. To the extent Plaintiff is attempting to attack the sufficiency of the evidence upon which his conviction is based and the imprisonment resulting from his conviction, such a claim must fail. Both claims, if successful in the instant Section 1983 action, would imply the invalidity of his state court drug possession conviction and resulting imprisonment. When an inmate's successful § 1983 damages action would necessarily imply that his sentence or conviction is invalid, the complaint must be dismissed unless the inmate can demonstrate that his conviction or sentence has been reversed on appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations or called into question by the

issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486-87. Because Plaintiff has not alleged facts indicating that his conviction and resulting confinement have been invalidated by a federal or state court or other appropriate tribunal, he may not proceed with his §1983 claims for false arrest, false imprisonment and corresponding damages. Accordingly, we find that Defendant is entitled to summary judgment with respect to these claims.

Malicious Prosecution

Plaintiff also appears to be asserting a claim for malicious prosecution. As stated previously, §1983 claim based on the theory of malicious prosecution stands on the Fourth Amendment and turns on the question of probable cause." *Gorcaj*, 51 Fed.Appx. at 159.

In view of the Grand Jury Indictment, Plaintiff has failed to overcome the prima facie evidence of probable cause. Moreover, under federal law, a police officer cannot be held liable for malicious prosecution where he did not make the decision to prosecute. *See Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002). Plaintiff has offered no evidence that Defendant participated in or influenced the Prosecutor's decision to bring charges against Plaintiff. As such, Plaintiff's § 1983 claim for malicious prosecution fails and Defendant is entitled to summary judgment with respect to said claim.

Plaintiff's Sixth Amendment Claim for Right to Counsel

Plaintiff alleges that during the traffic stop on January 5, 2007, Defendant continued to ask him questions despite Plaintiff's request to speak to an attorney.

The Sixth Amendment provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." U.S. CONST. amend. VI. It is when a defendant's own incriminating words are used against him at his trial that this right is breached. *Massiah v. United States*, 377 U.S. 201, 206 (1964). In addressing a defendant's right to counsel under the Sixth Amendment, the Sixth Circuit has held that, the right does not attach until such time as adversary judicial proceedings have been initiated against him. *U.S. v. Reynolds*, 762 F.2d 489 (6th Cir. 1985).

In Plaintiff's case, he was not arrested on January 5, 2007, and prosecution was not commenced against him as a result of this stop. Furthermore, Plaintiff has offered no evidence that any information obtained from him by Defendant on that date was used against him in any judicial proceeding. Accordingly, we find that Defendant is entitled to summary judgment with respect to this claim.

Sixth Amendment Privacy Claim

It appears from Plaintiff's Complaint that his privacy claim is asserted under state law.[4] Under Ohio law, invasion of privacy is divided into four distinct causes of action: 1) intrusion upon plaintiff's seclusion or solitude, or private affairs; 2) public disclosure of embarrassing private facts about the plaintiff; 3) publicity that places the plaintiff in a false light; 4) appropriation of the plaintiff's name or likeness for the defendant's advantage. *Piro v. Franklin Township*, 656 N.E.2d 1035, 1044 (Ohio Ct. App. May 24, 1995). As Defendant correctly points out, only the first of the four causes of action is relevant in this case. Plaintiff has offered no evidence that Defendant disclosed any embarrassing facts about him, caused any publicity placing Plaintiff in a false light, or appropriated Plaintiff's name or likeness for Defendant's advantage.

The nature of Plaintiff's privacy claim is unclear from the Complaint and Plaintiff's deposition testimony. To the extent Plaintiff claims that Defendant's search of his person and vehicle constituted an invasion of privacy, the existence of probable cause negates such a claim. *See Piro*, 656 N.E.2d at 1044. In light of our finding above with respect to Plaintiff's Fourth Amendment illegal search claim, *see supra* at pp. 8-10, we find that there was no wrongful intrusion into Plaintiff's private affairs. We find that summary judgment is appropriate as to Plaintiff's state law tort claim for invasion of privacy.

Immunity under O.R.C. § 2744.03

Defendant argues that he is entitled to immunity on Plaintiff's state law claims pursuant to O.R.C. § 2744.03. Section 2744.03(A) provides that:

> In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, ... or loss to a person or property allegedly caused by any act ...in connection with a government or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
> ....
> ...the employee is immune from liability unless one of the following applies:
> (a) The employee's acts ...were manifestly outside the scope of his employment or official responsibilities;
> (b) The employee's acts ...were with malicious purpose, in bad faith or in a wanton or reckless manner....

---

[4] Neither type of constitutional privacy rights have been implicated in this case. *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061-62 (6th Cir. 1998)(Courts have found a constitutional right to privacy in: 1) the making of certain highly personal decisions, such as marriage, procreation and child rearing; and 2) the disclosure of certain highly personal information).

O.R.C. § 2744.03(A)(6)(a)-(b). While it is undisputed that Defendant's acts were not "manifestly outside the scope" of his employment or official responsibilities as a police officer, it is disputed whether Defendant's actions were with a malicious purpose, in bad faith. Plaintiff's deposition testimony was that Defendant used several racial slurs while conducting the search of Plaintiff's person and vehicle. Plaintiff also testified that he heard Defendant state to another officer to "please find some crumbs, so we can lock his ass up." (Plaintiff's Dep. at 89, 102). Accepting Plaintiff's version of the facts as true for purposes of the present motion, we cannot say that it is undisputed that Defendant's actions were not taken in bad faith or with malicious purpose. For this reason, we find that Defendant is not entitled to immunity from the state law claims which has thus far survived summary judgment.

Assault and Battery

A police officer making an arrest is justified in using sufficient force to subdue a suspect. *State v. Yingling* 44 N.E.2d 361 (Oh. Ct. App. July 29, 1942)(citing *State v. Sells*, Case No. 243, 1939 WL 3272 at *3 (Oh. Ct. App. Nov. 6, 1939)). However, if an officer "uses unnecessary force, or if he assaults the person whom he is arresting without just cause or excuse, ... he loses the protection of the law." *Yingling*, 44 N.E.2d at 366. In light of our finding above with respect to Plaintiff's excessive force claim, *see supra* at pp. 5-7, we find that summary judgment is inappropriate with respect to Plaintiff's state law claims for assault and battery.

Defamation

Plaintiff's pleadings are, once again, unclear with respect to what statements by Defendant Plaintiff is claiming to be defamatory. In order to establish a claim for defamation under Ohio law, a plaintiff must show that 1) there has been an assertion of a false statement of fact, 2) the false statement was defamatory, 3) the false statement defamatory statement was published by defendant, 4) the publication was the proximate cause of the injury to the plaintiff, and 5) the defendant acted with the requisite degree of fault. *See Celebrezze v. Dayton Newspaper, Inc.*, 535 N.E.2d 755, 759 (Ohio Ct. App. July 5, 1988)(citing *Dupler v. Mansfield Journal Co.*, 413 N.E.2d 1187 (Ohio 1980)). Apart from Plaintiff's allegations that Defendant made false statements regarding Plaintiff's presence in the upstairs bedroom of 2120 Ninth Street, as well as Plaintiff's willingness to testify against Redman, Plaintiff has made no allegation nor offered evidence that any allegedly false statement made by Defendant was published. This failure alone justifies summary judgment in favor of Defendant with respect to Plaintiff's defamation claim. Moreover, as Plaintiff has completely failed to make an analysis of the evidence under the standards for stating a claim pursuant to Ohio law, we do not believe it is the Court's duty to search the record and hypothesize what his argument should be. He has, therefore, failed to articulate a *prima facie* case of defamation.

Intentional Infliction of Emotional Distress

Under Ohio law, a plaintiff may bring an independent tort action for intentional infliction

of emotional distress where a defendant engaged in "extreme and outrageous conduct" and caused plaintiff serious emotional distress. *Yeager v. Local Union 20, Teamsters*, 453 N.E.2d 666 (Ohio 1983); *see also Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1082 (Ohio 1991). In order to establish a claim for intentional infliction of emotional distress, Plaintiff must prove that: 1) Defendant either intended to cause emotional distress or knew or should have known that his conduct would result in serious emotional distress to plaintiff; 2) Defendant's conduct was outrageous and extreme beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; 3) Defendant's conduct was the proximate cause of plaintiff's psychic injury; and 4) Plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. *Meyers v. Hot Bagels Factory, Inc.*, 721 N.E.2d 1068. 1075 (Ohio Ct. App. Jan. 22, 1999)(citing *Ekunsumi v. Cincinnati Restoration, Inc.*, 698 N.E.2d 503, 506 (Ohio Ct. App. 1997).

The Ohio Supreme Court, quoting and adopting the Restatement (Second) of Torts' definition of extreme and outrageous conduct, stated:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim, "Outrageous!"

*Yeager*, 453 N.E.2d at 671 (quoting Restatement (Second) of Torts § 46, comment d (1965)). Conduct that amounts to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" is insufficient. *Id.* at 672. "[I]t is for the Court in the first instance to determine whether 'defendant's conduct may be regarded as so extreme and outrageous as to permit recovery'" *Crawford v. ITT Consumer Financial Corp.*, 653 F. Supp. 1184, 1192 (S.D. Ohio 1986) (Spiegel, J.) (quoting Restatement (Second) of Torts § 46, comment h).

In the present case, Plaintiff appears to be alleging that the search conducted by Defendant wherein Defendant allegedly pulled Plaintiff's pants down in view of others caused Plaintiff serious emotional distress. Viewing the evidence in the light most favorable to Plaintiff, we cannot assume that a jury could not find Defendant's actions in this respect to be "extreme and outrageous." Nonetheless, Plaintiff has failed to show that his alleged emotional distress was "serious" as required under Ohio law. Plaintiff provides no evidence of seeking expert psychological assistance. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1111(6th Cir. 2008). Indeed, Plaintiff has offered no evidence of any serious emotional distress apart from embarrassment at the time of the incident. For this reason, we find that Plaintiff's claim for

intentional infliction of emotional distress fails.

Punitive Damages

Punitive damages may be sought on a § 1983 claim upon a showing that Defendant's conduct was motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Under Ohio law, Plaintiff must show that Defendant's conduct "is aggravated by the existence of malice or ill will, or that the wrongdoing was particularly gross or egregious." *Mid-America Acceptance Co. v. Lightle*, 579 N.E.2d 721, 729 (Ohio Ct. App. Aug. 1,1989)(quoting *Combs Trucking, Inc. v. International Harvester Co.*, 466 N.E.2d 883, 888 (Ohio 1984)). In light of our finding that a factual issue exists with respect to malice, ill will and/or bad faith on the part of Defendant, we find summary judgment inappropriate on this issue. For this reason, we find that Defendant's Motion for Summary Judgment should be denied with respect to Plaintiff's claim for punitive damages.

**IT IS THEREFORE RECOMMENDED THAT:**

1) Defendant's Motion for Summary Judgment (Doc. 36) be GRANTED in part and DENIED in part in accordance with the decision herein.

2) Summary Judgment be GRANTED with respect to Plaintiff's claims for Illegal Search, False Arrest, False Imprisonment, Malicious Prosecution, Invasion of Privacy, Right to Counsel, and Intentional Infliction of Emotional Distress

4) Summary Judgment be DENIED with respect to Plaintiff's claims for Excessive Force, Assault and Battery, and Punitive Damages.

Date: 9/10/09

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING
## OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) in the event this Report is served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

E:\SUMJUDG\mardis.msj.wpd

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X | ☒ Agent<br>☐ Addressee |
| | B. Received by (Printed Name) | C. Date of Delivery |
| 1. Article Addressed to:<br><br>Kendle Mardis 578-648<br>PO Box 209<br>Orient, OH 43146 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No | |
| | 3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D. | |
| | 4. Restricted Delivery? (Extra Fee) ☐ Yes | |
| 2. Article Number<br>(Transfer from service label) | 7002 3150 0000 8388 4230 | |
| PS Form 3811, August 2001 | Domestic Return Receipt | 102595-02-M-1540 |

1:07cv1005 (Doc. 60)